IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

|  |  |
|---|---|
| DANIEL A. H., | CV 25-15-M-KLD |
| Plaintiff, | |
| vs. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review

of a decision by the Commissioner of Social Security denying his application for

disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§

401 et seq.

## I.    Procedural Background

Plaintiff protectively filed an application for Title II benefits on July 14,

2021, alleging disability beginning on July 1, 2020 (Tr. 286-289).[1] Plaintiff met the

insured status requirement of the Social Security Act through June 30, 2022. (Tr.

23). Plaintiff's claim was denied initially and on reconsideration, and by an ALJ

---

[1] Citations to the certified administrative record filed by the Commissioner (Doc. 10) are designated as "Tr." and refer to the Bates-stamped page numbers assigned by the Social Security Administration rather than the page numbers assigned by the Court's electronic docketing system.

1

after an administrative hearing. (Tr. 21-33, 95-104, 106-27). The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision dated August 13, 2024, the agency's final decision for purposes of judicial review. (Tr. 1-6). Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

## II.     Legal Standards

### A.     Standard of Review

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an

ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

**B.      Disability Determination**

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) he suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A); *see also Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act. At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will proceed to step three. At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, he must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a claimant's residual functional capacity is a critical part of steps four and five of the sequential evaluation processes.

4

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v). The ALJ may satisfy this burden through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this burden, the claimant is not disabled.

## III.    **Discussion**

The ALJ followed the five-step sequential process in evaluating Plaintiff's claim. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of July 1, 2020, through his date last insured of June 30, 2022. (Tr. 23). At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar and cervical spine, osteoarthritis of the hips, degenerative joint disease of the left upper extremity/hand, PTSD, major depressive disorder, and generalized anxiety disorder. (Tr. 23). At step three, the ALJ found Plaintiff did not have an

impairment or combination of impairments that met or medically equaled the severity of any impairment described in the Listing of Impairments 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. § 404.1520(d), 404.1525 and 404.1526). (Tr. 24).

The ALJ then found that Plaintiff had the residual functional capacity (RFC) to perform light work with several limitations including:

> The claimant can lift or carry 20 pounds occasionally and 10 pounds frequently. He can sit about six hours, and stand or walk about four hours, in an eight-hour workday. He can occasionally climb ramps and stairs. He cannot climb ladders, ropes or scaffolds. He can occasionally balance, stoop, crouch, kneel and crawl. He can occasionally reach overhead with the left upper extremity. He can frequently reach laterally and in front with the left upper extremity. He can frequently handle, finger and feel with the left upper extremity. He can tolerate occasional exposure to extreme cold. He can never work around unprotected heights or around moving or dangerous machinery. He can perform work that consists of only simple tasks. He cannot have interaction with the general public. He can have occasional interaction with coworkers. He can have occasional interaction with supervisors, meaning requiring supervisor's critical checking of the claimant's work. He can maintain concentration, persistence and pace for extended periods of two-hour segments during a normal workday with normal breaks in work that consist of only simple tasks. He can deal with occasional changes in a routine work setting.

(Tr. 26). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work through the date last insured. (Tr. 32). Proceeding to step five, the ALJ found based on the vocational expert's testimony that other jobs exist in significant numbers in the national economy that Plaintiff

could perform, including light work as a small product assembler and electronics worker, and sedentary work as a document preparer. (Tr. 33).

Plaintiff argues the ALJ's decision is not supported by substantial evidence and raises two issues on appeal. First, Plaintiff argues the ALJ failed to evaluate all of the medical opinions of record. Second, Plaintiff argues the ALJ did not provide clear and convincing reasons for discounting his subjective symptom testimony.

## A.   Medical Opinion Evidence

Under the amended regulations that apply to Plaintiff's claim, the ALJ must consider all medical opinions and prior administrative medical findings and evaluate their persuasiveness using several listed factors. 20 C.F.R. §§ 404.1520c(a), 416.920(a). A medical opinion is defined as a "statement from a medical source about what [a claimant] can do despite [his] impairment(s) and whether [the claimant has] one or more impairment-related limitations" in the ability to perform the physical and mental demands of work. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). The factors that the ALJ must consider when evaluating a medical opinion include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The two most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

7

However, an ALJ is not required to evaluate statements on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1520(c)(3), 416.920b(c)(3). This includes statements about whether the claimant is or is not disabled, able to work, or able to perform regular and continuing work. 20 C.F.R. §§ 404.1520(c)(3)(i), 416.920b(c)(3)(i). Such statements are "inherently neither valuable nor persuasive" as a matter of law. 20 C.F.R. §§ 404.1520(b)(c), 416.920b(c).

Plaintiff argues the ALJ failed to evaluate a medical opinion provided by Licensed Clinical Professional Counselor (LCPC) Andy Hudak. The Social Security Administration asked LCPC Hudak to provide information, including an "opinion about [Plaintiff's] ability to do work-related physical and/or mental activities despite the limitations or restrictions imposed by his medical condition(s)." (Tr. 931). In a letter dated November 1, 2021, LCPC Hudak provided a clinical summary of Plaintiff's mental health history, treatment, and prognosis. (Tr. 933-936). LCPC Hudak did not, however, identify any specific functional limitations. (Tr. 933-936). In closing, LCPC Hudak stated it was his "considered opinion that the addition of some financial security through SSI would remove the anchor on [Plaintiff's] progress that the continual poverty of his situation, as well as his physical and emotional limitations have caused." (Tr. 936). The ALJ considered LCPC Hudak's statement but correctly found that it was "not a medical opinion" because it addressed the ultimate issue of disability, which is an

issue reserved to the Commissioner. (Tr. 31).

Plaintiff does not contest that LCPC Hudak's closing statement addressed an issue reserved to the Commissioner, but argues his letter included other statements about Plaintiff's functional limitations that constitute medical opinion evidence the ALJ was required to evaluate for persuasiveness. Specifically, Plaintiff points to statements about Plaintiff's fear of men in positions of power. LCPC Hudak wrote:

> Treatment tasks included his fear of men, and especially men in any sort of power position (law-enforcement, myself, bosses, supervisors, parental figures, etc.), his paradoxical patterns of rescuing people (especially women), exploring his relationship history …, and a reduction in his reactivity and defensiveness.

(Tr. 934). LCPC Hudak noted that Plaintiff's "inability to consistently hold a job was undermined by the strong reactivity that occurred whenever any male supervisor raised their voice and/or shamed him." (Tr. 935). LCPC Hudak observed that with therapy, Plaintiff's "reactivity baseline has significantly improved, though it flairs up, at times," and "[h]e has also begun to break his isolation from men." (Tr. 936). Plaintiff argues these are statements about what he is capable of doing, and constitute limitations on his ability to respond appropriately to supervisors and coworkers. (Doc. 12 at 7).

The Commissioner counters, and the Court agrees, that Plaintiff's argument is based on a strained reading of LCPC Hudak's letter. The portions that Plaintiff highlights do not provide any specific functional limitations and are more properly

categorized as "other medical evidence" under the regulations. 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(2) ("Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."). The ALJ was not required to specifically articulate how he considered this "other medical evidence." *See* 20 C.F.R. §404.1520c, 416.920(c). The ALJ acknowledged LCPC Hudak's letter and, notably, in the RFC limited Plaintiff to no interaction with the general public and only "occasional" interaction with coworkers and "supervisors, meaning requiring supervisor's critical checking of the claimant's work." (Tr. 26). The ALJ properly found that LCPC Hudak's letter was not a medical opinion, and Plaintiff has not shown that his statements required any greater limitations in the RFC.

**B.    Subjective Symptom Testimony**

The ALJ must follow a two-step process when evaluating a claimant's subjective symptom testimony. *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Ferguson*, 95 F.4th at 1199 (citation omitted). If the claimant meets this initial burden, and

there is no evidence of malingering, at step two the ALJ may discredit the claimant's subjective symptom testimony about the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so." *Ferguson*, 95 F.4th at 1199.

The clear and convincing standard requires the ALJ to "show his work" by providing a "rationale … clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)). In addition, the court is "constrained to review the reasons the ALJ asserts." *Brown-Hunter*, 806 F.3d at 492. This means the court "may not take a general finding" by the ALJ "and comb the administrative record to find specific" evidence in support of that finding. *Brown-Hunter*, 806 F.3d at 494. Rather, the ALJ is responsible for identifying the testimony he finds not credible and linking that testimony to the particular parts of the record supporting his determination. *Brown-Hunter*, 806 F.3d at 494.

11

If the ALJ provides at least one valid reason to discount the claimant's testimony, any error in the remaining reasons is harmless. *See e.g. Joshua P. Kijakazi*, 2021 WL 4330858, at *3 (D. Or. Sept. 23, 2021) (citing *Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's adverse credibility determination because the ALJ "provided at least one clear and convincing reasons supported by substantial evidence for rejecting [it] as not credible") and *Gilliland v. Saul*, 821 F. App'x 798, 799 (9th Cir. 2020) (If the ALJ provides "at least one valid reason to discount [a claimant's symptom] testimony, error in the remaining reasons is harmless"). "There is, however, one important caveat to this rule: A lack of supporting medical evidence cannot be the only valid reason provided for discounting a claimant's testimony." *Joshua P.*, 2021 WL 4330858, at *3 (citing *Valdez v. Berryhill*, 746 F.App'x 676, 677 (9th Cir. 2018) (stating that an "ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason").

Here, the ALJ found that Plaintiff met his initial burden under the two-step process because he produced evidence of medically determinable impairments that could reasonably be expected to cause the alleged symptoms. (Tr. 27). Accordingly, and because there is no evidence of malingering, the ALJ was required to provide specific, clear, and convincing reasons for rejecting Plaintiff's subjective symptom testimony. Plaintiff argues the ALJ failed to meet this burden.

At his administrative hearing on August 6, 2024, Plaintiff testified that he does not like being around people as a result of his PTSD, and does not really leave the house except to go grocery shopping at smaller stores where he knows the person who is working. (Tr. 48-49). Plaintiff testified that he attended weekly or biweekly therapy sessions, and said he had stopped taking his mental health medications about a month before the hearing because they had lost their effectiveness. (Tr. 50). He testified that he and his providers were trying to get him on proper medication and get down to the root cause of his depression. (Tr. 50). Plaintiff stated that at the time of his hearing, he was taking high blood pressure medication, pain medication, and muscle relaxers. (Tr. 50). Plaintiff explained that people trigger his anger, which is why he stays home, and when he is driving his road rage tends to explode worse than it should. (Tr. 51).

Turning to his physical impairments, Plaintiff testified that he injured himself in a fall from a ladder and, as a result, had surgery on his left arm in December 2019. (Tr. 53-54). He stated that he can lift five, ten pounds maximum, with his left arm, and cannot reach above waist level with his left arm. (Tr. 54). As to his low back, Plaintiff testified that he has had radiofrequency ablation and MRIs, and was going through physical therapy. (Tr. 55). Plaintiff explained that the more he uses his neck it "swells real bad and then it gets to the point where I cannot even breathe because of the pain and the pressure that comes from the

swelling of the muscles." (Tr. 56). Plaintiff stated that there is some pinching in his neck that gives him migraines. (Tr. 57). As to his hip, approximately six months after having surgery he was able to help with remodeling his home by doing such tasks as using his right arm to peel wallpaper. (Tr. 57-58). Plaintiff also testified that he attended art school for a bit in 2021. (Tr. 59). He took two art classes, during which he was able to focus on his own things and did not have to focus on everything going on around him, but once he went into his math and reading classes, he started getting extreme panic attacks in the middle of class because of the amount of people around him. (Tr. 50).

The ALJ summarized Plaintiff's subjective symptom testimony, but discredited his statements concerning the intensity, persistence and limiting effects of his symptoms for two main reasons. First, to the extent Plaintiff asserted he was unable to work due to his physical impairments, ALJ found that Plaintiff's testimony was not entirely consistent with the objective medical evidence. (Tr. 27). For instance, the ALJ cited lumbar and cervical imaging from 2019 and September 2021 showing only mild or minimal findings. (Tr. 27, citing Tr. 735, 768-769, 926). The ALJ also pointed to hip x-rays from September 2021 and a left hip MRI from December 2021 showing only mild, minimal, or normal findings. (Tr. 28, citing 734, 928, 1365). The ALJ permissibly found that these mild and minimal findings were not entirely consistent with, and did not fully corroborate, Plaintiff's

testimony about the severity of his back and neck pain, including that the pain and swelling can sometimes be so severe that has difficulty breathing. *See Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's testimony."); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Second, the ALJ found Plaintiff's subjective symptom testimony was not entirely consistent with evidence that he showed improvement with relatively conservative treatment. (Tr. 28-29). An ALJ may reject a claimant's symptom testimony where the record reflects "a gradual improvement in [the claimant's] functioning with prescribed medication" and treatment. *Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023) (internal quotation marks omitted) (citing *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see also Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (evidence of a claimant's improvement with treatment can undermine a claim of disability). Evidence of conservative treatment may also constitute a clear and convincing reasons to discount a claimant's testimony. *See Smartt*, 53 F.4th at 500; *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007).

Beginning with Plaintiff's physical impairments, the ALJ addressed medical records from November 2019 to May 2021 reflecting that Plaintiff had surgery on his left arm in December 2019 and underwent treatment for back and hip pain, including injections, medial branch blocks, and radiofrequency ablation. (Tr. 28, citing Tr. 746, 793, 807, 860, 879; Tr. 29, citing Tr. 53). The ALJ noted that by June 2020, Plaintiff showed overall improvement in his left arm (Tr. 29, citing Tr. 538), and by December 2020 was stable and reported that his low back pain had improved with injections (Tr. 28, citing Tr. 847). The ALJ acknowledged that Plaintiff's symptoms flared in May 2021, but cited records from August 2021 reflecting that Plaintiff's symptoms again improved with injections. (Tr. 28, citing Tr. 885, 913). The ALJ also acknowledged that Plaintiff reported having neck and joint pain as well as some hand numbness in December 2021, but cited treatment notes from May 2022 indicating Plaintiff had been able to manage his pain. (Tr. 29, citing Tr. 1102, 1160). Additionally, the ALJ observed that at a medical appointment on June 22, 2022—just days before his date last insured of June 30, 2022—Plaintiff presented "for pain management related to chronic neck and back pain" and was "doing well" overall on his current regimen. (Tr. 29, citing Tr. 1231).

The ALJ also addressed evidence reflecting that Plaintiff's mental symptoms improved with treatment. The ALJ noted that Plaintiff reported to his

16

psychiatrist in August 2020 that the medications he had been using for five years were no longer working for his anxiety and depression. (Tr. 29, citing Tr. 605, 610). Plaintiff's provider changed his medications, and the ALJ cited treatment notes from a follow-up appointment in September 2020 during which Plaintiff reported that he was "doing good, his attitude was better, and he was more sociable. (Tr. 29, citing Tr. 595). The ALJ noted that Plaintiff similarly reported in October 2020 that medications had improved his mood and anxiety (Tr. 29, citing Tr. 586), and told a primary care provider in October 2021 that his mood was "so much better with no depression, panic," suicidal ideation, or "hopelessness." (Tr. 29, citing Tr. 994). The ALJ acknowledged that Plaintiff's symptoms increased in January 2022 after he had been off medication for about six months, but noted Plaintiff reported improvement at an appointment in February 2022, and had been stable on medication and felt "pretty good" in May 2022. (Tr. 29-30, citing Tr. 1036, 1024, 1160).

Plaintiff argues that substantial evidence does not support the ALJ's characterization of Plaintiff's treatment—which included injections and narcotic pain medication and other interventions—as "conservative". (Doc. 12 at 11, citing *Ruiz v. Berryhill,* 2017 WL 4570811, at *5-6 (C.D. Cal. Oct. 11, 2017) (finding the ALJ erred in characterizing treatment that included acupuncture, narcotic pain medication, facet joint injections, epidural injections, physiotherapy, chiropractic

care, and aquatic therapy as conservative).  In some cases, however, injections and narcotic pain medication may be considered part of a conservative treatment regimen. *See e.g. Fry v. Berryhill*, 749 Fed.Appx. 659, 660-61 (9th Cir. 2019) (unpublished) (rejecting the claimant's "argument that the ALJ erred in characterizing her treatment as conservative, particularly regarding her injection and cervical fusion surgery"); *Alvarado v. Berryhill*, 2018 WL 3129770, at \*3 (C.D. Cal. June 22, 2018) ("[T]he ALJ did not err in concluding that relatively conservative forms of treatment like Vicodin and epidural injections belied Plaintiff's allegation of disabling back pain.").

On this record, the ALJ properly characterized Plaintiff's treatment as relatively conservative. But even if the ALJ erred in this respect, he further found that Plaintiff's symptoms improved with treatment, which is an independent reason for discounting subjective symptom testimony. *See Wendy T. v. Commissioner of Social Security*, 2021 WL 1976953, at \*2 (W.D. Wash. May 18, 2021) ("[E]ven if the ALJ erred in characterizing Plaintiff's treatment as conservative, Plaintiff has not shown the ALJ erred in finding her symptoms improved with treatment, which is an independent reason to discount her allegations of disabling limitations.") (citing *Morgan*, 169 F.3d at 599-600). The ALJ reasonably found that, while Plaintiff's symptoms sometimes flared or intensified, the medical evidence summarized above reflected a pattern of overall improvement with medication and

18

other treatment. While Plaintiff asserts the medical records should be interpreted differently, the Court may not substitute its judgment for that of the ALJ and "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995). On this record, the ALP permissibly discounted Plaintiff's symptom testimony in part based on evidence that he showed improvement with relatively conservative treatment. (Tr. 28-29).

Even if the record could support a different result, the Court must affirm the ALJ's findings if they are supported by substantial evidence. *See Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) ("[W]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."). Overall, the Court finds that the ALJ provided at least one specific, clear and convincing reason for discounting Plaintiff's symptom testimony.[2]

## IV.   Conclusion

For the reasons discussed above, the Court finds the ALJ's decision is

//

---

[2] Because the ALJ provided at least one clear and convincing reason for discrediting Plaintiff's subjective testimony, the Court need not consider whether the ALJ properly cited Plaintiff's reported activities as an additional reason for discounting his testimony.

supported by substantial evidence and free of prejudicial legal error. Accordingly,

IT IS ORDERED that the Commissioner's decision is AFFIRMED.

DATED this 27th day of March, 2026.

_____
Kathleen L. DeSoto
United States Magistrate Judge